Eric CLARK, Secretary of State for the State of Mississippi, in his capacity as Land Commissioner; and the State of Mississippi, Plaintiffs,

v.

The MAYOR AND CITY COUNCIL OF THE CITY OF COLUMBUS, Mississippi; et al., Defendants.

No. 1:02CV1–D–D.

United States District Court, N.D. Mississippi, Eastern Division.

March 4, 2002.

Alan M. Purdie, Gore Kilpatrick Purdie Metz & Adcock, Dion J. Shanley, Hickman Goza & Spragins, PLLC, Ridgeland, MS, for plaintiffs.

Thomas G. Wallace, Thomas G. Wallace & Associates, Columbus, MS, Frank D. Montague, Jr., Montague, Pittman & Varnado, Hattiesburg, MS, for defendants.

## OPINION GRANTING MOTION TO REMAND

DAVIDSON, Chief Judge.

Presently before the court is the Plaintiffs' motion to remand this cause to the Chancery Court of Lowndes County, Mississippi. Upon due consideration, the court finds that the motion should be granted and this cause remanded to state court for ultimate resolution.

### A. Factual Background

The history behind Mississippi's sixteenth-section lands has already been well documented. See, e.g., Lipscomb v. Columbus Mun. Separate Sch. Dist., 269 F.3d 494, 498–99 (5th Cir.2001).[1] In order to avoid needless repetition, the court shall briefly recite only the facts most relevant to this case in its current posture.

In 1890, Mississippi ratified its current constitution. Section 95 of Mississippi's 1890 constitution prohibits the donation of state lands to private parties. See Miss. Const. of 1890, art. 4, § 95 ("Lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals, or to railroad companies."). In 1989, the Mississippi Supreme Court held that Section 95's non-donation principle prohibits leases or sales of State land, including leases of sixteenth-section lands, for grossly inadequate consideration. Hill v. Thompson, 564 So.2d 1, 9 (Miss.1989).

Apparently relying on Hill, the State and individual school boards began asserting that existing sixteenth-section leases for nominal consideration were void and due to be renegotiated. The president of the local school board in Columbus followed suit and announced in 1990 that the Columbus sixteenth-section leases, most of which are to this day being leased for pennies per year, were also invalid and would have to be renegotiated. This announcement came in spite of the fact that the Columbus sixteenth-section leases were unique because they contained "renewable forever" provisions that were signed before the ratification of the 1890 Mississippi Constitution.

Various Columbus leaseholders responded by filing suit in the Chancery Court of Lowndes County, Mississippi, seeking confirmations of title. That suit was subsequently voluntarily dismissed by the leaseholders, and a putative class action lawsuit was filed in federal court on January 24, 1992. In the federal action, the leaseholders sought two forms of relief: (i) to certify a class of leaseholders; and (ii) a declaration that the State's threatened action to void the leases and renegotiate would violate the Contract Clause of the United States Constitution. The leaseholders' claims seeking confirmations of title were abandoned.

The court certified the class of leaseholders, but then abstained under the Pullman and Burford doctrines. Lipscomb v. Columbus Mun. Separate Sch. Dist., No. 1:92CV20–S–D, 1996 WL 671715, at *3–*4 (N.D.Miss. July 23, 1996). The United States Court of Appeals for the Fifth Circuit subsequently reversed the court's ruling on abstention and remanded. Lipscomb v. Columbus Mun. Separate Sch. Dist., 145 F.3d 238, 240–42 (5th Cir.1998). Upon remand, the court redefined the class and granted summary judgment in favor of the leaseholders.

1. In short, before Mississippi became a state, the United States Congress set aside the sixteenth section of every township in the Mississippi Territory to be used for the benefit of public schools. Upon granting statehood to Mississippi in 1817, Congress gave the sixteenth-section land to the new state for the benefit of its schools. Thereafter, the Mississippi legislature authorized the leasing of the school lands, the proceeds of which would finance public schools.

*Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 88 F.Supp.2d 640 (N.D.Miss. 2000). On October 3, 2001, the Fifth Circuit affirmed the court's ruling, and remanded the case "for further proceedings including any necessary resolution of disputes over the entitlement of individual class members to the relief ... affirmed by this court." *Lipscomb*, 269 F.3d at 514.

Thereafter, on December 3, 2001, the State filed four separate lawsuits in the Chancery Court of Lowndes County, Mississippi, seeking to confirm the State's title to the four subject parcels of sixteenth-section property and to remove any clouds on the State's title. The Defendants removed the four cases to this court on January 2, 2002, asserting the All Writs Act, 28 U.S.C. § 1651(a), as the jurisdictional basis for removal.[2] On January 28, 2002, the Plaintiffs motioned the court to remand the four cases to state court. .

### B.  Standard for Remand

A defendant may generally remove a civil action from state court to federal court provided that the federal court has original jurisdiction over the plaintiff's claims. *See* 28 U.S.C. § 1441(a) (2001). After the case's removal, however, a federal district court must remand the case to state court if it finds that it lacks jurisdiction. *See* 28 U.S.C. § 1447 (2001). Here, the Defendants' Notice of Removal asserts that this case is removable pursuant to the All Writs Act, 28 U.S.C. § 1651(a), because removal of this action is necessary to aid this court's jurisdiction in the *Lipscomb* class action litigation, currently pending before this court as cause number 1:92CV20–D–D.

For the reasons set forth below, the court shall remand this cause to state court for ultimate resolution.

### C.  Discussion

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2001).

While the All Writs Act authorizes federal courts to issue commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained," the Fifth Circuit has held that the Act cannot serve as an independent basis of federal jurisdiction. *Texas v. Real Parties in Interest*, 259 F.3d 387, 392 (5th Cir.2001); *see In re McBryde*, 117 F.3d 208, 220 (5th Cir.1997) (holding that "section 1651(a) is not an independent grant of jurisdiction"). Accordingly, the court holds that the Plaintiffs' motion to remand should be granted.

In *Texas*, the Fifth Circuit held that the All Writs Act could not be used to remove a case where no independent basis for federal jurisdiction existed. *Texas*, 259 F.3d at 388. In that case, after the plaintiff State of Texas and defendant members of the tobacco industry reached a settlement agreement which was later incorporated into a final judgment entered by the district court, a dispute arose regarding the amount of attorney's fees to be awarded. *Id.* Investigating possible fraud and breach of fiduciary duty, Texas initiated a pre-litigation discovery proceeding in state court. *Id.* The defendants removed the proceeding to federal court, arguing that

---

**2.** It is undisputed that neither federal question jurisdiction nor federal diversity jurisdiction are proper bases for the removal of this action to this court: the Plaintiffs' claims do not arise under the Constitution, laws, or treaties of the United States so as to invoke federal question jurisdiction, nor does complete diversity exist between the parties so as to invoke federal diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332 (2001).

the All Writs Act applied "to protect the integrity of the court's judgment from a collateral assault." *Id.* Pointing to the lack of diversity or any federal question, Texas moved to remand. *Texas,* 259 F.3d at 388. After the lower court denied its motion to remand, Texas appealed to the Fifth Circuit. *Id.* In reversing the district court's denial of Texas' motion to remand, the Fifth Circuit held that the All Writs Act could not be used as a vehicle for removal absent "extraordinary circumstances" that were not present in the *Texas* case.[3] *Id.* at 392. In short, the Fifth Circuit rejected the notion that the All Writs Act can transform a non-removable action into a removable one. *Id.* at 393–94.

In light of the Fifth Circuit's holding in *Texas,* the court finds that this case should be remanded for two reasons: (i) other than the All Writs Act, there is no independent basis for federal jurisdiction; and (ii) no extraordinary circumstances exist which would justify this court exercising jurisdiction under the All Writs Act. Like the defendants in *Texas,* the Defendants in this case have no basis for removal other than the All Writs Act. Accordingly, the court holds that the Plaintiffs' motion to remand should be granted.

■ The Defendants argue that extraordinary circumstances justifying removal under the All Writs Act exist in this case because this case is related to the *Lipscomb* class action that is pending in this court, and a ruling by the Lowndes County Chancery Court concerning the merits of this case may lead to inconsistent rulings and re-litigation of matters already decided by this court in *Lipscomb.* The court finds, however, that there are no extraordinary circumstances present in this case to justify employing the All Writs Act to remove this case to federal court. Just as the Fifth Circuit in *Texas* refused to recognize the tobacco industry defendants' arguments that extraordinary circumstances were present because future lawsuits could result if removal was denied, so too here it appears that the mere potential for possible future, inconsistent rulings does not amount to the "extraordinary circumstances" which the *Texas* court suggested *might* make it pause to consider whether the unusual and expansive exercise of jurisdiction under the All Writs Act was appropriate. *Texas,* 259 F.3d at 395.

Moreover, it is not at all plain to the court that a real threat exists for future, inconsistent rulings, because no part of the court's judgment in *Lipscomb* appears, at this juncture, to be jeopardized by the Plaintiffs' state court action. The State, as plaintiff in the four Chancery Court lawsuits at issue, essentially seeks to have the Lowndes County Chancery Court confirm the title of the State of Mississippi to the subject parcels of sixteenth-section property and remove any clouds on the State's title. No such claims were raised in the *Lipscomb* federal litigation, nor are any such claims currently pending before this court. *See Lipscomb,* 269 F.3d at 501 ("Lipscomb did originally seek to quiet title, but he abandoned that claim. His amended complaint seeks only a declaration that the invalidation of the price terms of the leases is prohibited by the Contract Clause of the Constitution."). Thus, based

---

3. The Fifth Circuit explicitly declined to rule whether a case may be removed to federal court under the All Writs Act if "extraordinary circumstances" (such as an actual threat from the state court to overrule a federal court judgment) are present. *Texas,* 259 F.3d at 395. The court did make clear, however,

that "[i]n the absence of such extraordinary circumstances, however, that indisputably demand such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment, we hold that the All Writs Act cannot be employed as a vehicle for removal." *Id.*

upon the nature of the State's claims in the Lowndes County Chancery Court, the court finds that there are no extraordinary circumstances present that justify removal of this cause pursuant to the All Writs Act.

Of course, this is not to say that this court is precluded from invoking the All Writs Act in the future to protect its judgment in *Lipscomb* if that judgment is infringed upon by the state court proceedings. As the *Texas* court noted, "if, at some point in the future, the State attempts explicitly to upset provisions of the settlement agreement in state court, circumstances may well dictate that the proceeding will be enjoined." *Texas,* 259 F.3d at 395. However, the fact that the All Writs Act provides this court with a method to enjoin execution of an order that actually impairs its judgment is a far cry from finding that it justifies the wholesale removal of an entire state court case simply out of fear that at some future point, the disposition of a case involving different claims and seeking different relief might somehow have an impact on a prior federal court judgment.

Accordingly, because there is no independent basis for federal jurisdiction other than the All Writs Act, and because no extraordinary circumstances exist which warrant this court exercising jurisdiction solely under the All Writs Act, federal subject matter jurisdiction is lacking over this case. The court therefore finds that, pursuant to 28 U.S.C. § 1447(c), the Plaintiffs' motion to remand should be granted and this case remanded to the Chancery Court of Lowndes County.

A separate order in accordance with this opinion shall issue this day.